IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANNE MARIE BAGBY, | Civil No. 10-1581-PK |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, Oregon 97045
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204


PAGE 1 - FINDINGS AND RECOMMENDATION

Gerald J. Hill
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

PAPAK, Magistrate Judge:

Plaintiff, Anne Marie Bagby, brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") disability benefits under the Act. For the reasons set forth below, the Commissioner's decision should be affirmed and this case should be dismissed.

## PROCEDURAL BACKGROUND

On July 27, 2005, plaintiff protectively filed an application for SSI. Tr. 18, 45-6, 72-7, 95. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"); on November 13, 2008, an ALJ hearing was held before the Honorable Dan R. Hyatt. Tr. 317-36. On September 29, 2009, ALJ Hyatt issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 29. After the Appeals Council declined to review the ALJ decision, plaintiff filed a complaint in this Court. Tr. 5-8.

## FACTUAL BACKGROUND

Born on November 23, 1965, plaintiff was 39 years old on the alleged onset date of disability and 42 years old at the date of the hearing. Tr. 18, 72. Plaintiff dropped out of high school

PAGE 2 - FINDINGS AND RECOMMENDATION

during her freshman year but is literate.  Tr. 330.  Plaintiff has past relevant work experience as a bartender, house cleaner, laundry worker, packager shipper, and wine seller.  Tr. 27, 324-5, 327-8.  She alleges disability beginning November July 27, 2005[1], due to anxiety, loss of memory, poor concentration, fear of people, and post-traumatic stress disorder ("PTSD").  Tr. 87.

A vocational expert ("VE") testified at the hearing.  Tr. 328-35.  The VE opined that there were jobs available in the local and national economies which plaintiff could perform, such as laundry worker, janitor, and sandwich maker.  Tr. 330-1.  However, when asked if leaving the job site, without excuse, once per month would preclude sustained employed, the VE responded yes.  Tr. 332.  The VE also responded yes when asked if missing two days of work per month would preclude sustained employment.  Tr. 333.

## STANDARD OF REVIEW

This Court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

---

[1] Plaintiff initially alleged disability beginning on July 31, 2002.  Tr. 18, 72.  At the hearing, the ALJ permitted plaintiff to amend the alleged onset date to July 27, 2005.  Tr. 320, 18.

PAGE 3 - FINDINGS AND RECOMMENDATION

The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

Third, the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively

presumed disabled; if not, the Secretary proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Secretary.

At step five, the Secretary must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

**DISCUSSION**

I. <u>The ALJ's Findings</u>

At step one of the five-step sequential evaluation process outlined above, ALJ Hyatt found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 20, Finding 1. At step two, the ALJ determined that plaintiff had the following severe impairments: anxiety disorder and PTSD. Tr. 20, Finding 2. At step three, the ALJ found that plaintiff did not have an impairment, singly or in combination, that met or medically equaled the requirements of a listed impairment. Tr. 21, Finding 3. These findings are not in dispute.

Because plaintiff did not establish disability at step three, the ALJ continued the evaluation process to determine how

PAGE 5 - FINDINGS AND RECOMMENDATION

plaintiff's medical impairments affected her ability to work.  The
ALJ resolved that plaintiff had the Residual Functional Capacity
("RFC) to perform a full range of work at all exertional levels, but
with the following nonexertional limitations: no contact with the
public; occasional contact with coworkers; and simple, repetitive
tasks.  Tr. 22, Finding 4.  Plaintiff disputes her RFC assessment.

At step four, the ALJ found that plaintiff was unable to
perform her past relevant work.  Tr. 27, Finding 5.  This finding
is not in dispute.  Finally, at step five, the ALJ found that there
are jobs that exist in significant numbers in the national and
local economies that plaintiff could perform.  Tr. 27-8, Finding 8.
This finding is in dispute.  Based on these findings, the ALJ
determined that plaintiff was not disabled within the meaning of
the Act.  Tr. 29.

II.  Plaintiff's Allegations of Error

Plaintiff's alleges that the ALJ erred by: 1) improperly
discrediting her testimony; 2) erroneously rejecting third-party
statements; 3) failing to properly assess the opinions of
plaintiff's doctors; 4) not including all of her limitations in the
RFC; and 5) accepting jobs identified by the VE that are
inconsistent with the Dictionary of Occupational Titles ("DOT").
See Pl.'s Opening Br. 11.

A.  Plaintiff's Credibility

Plaintiff asserts that the ALJ erred by failing to provide
clear and convincing reasons for rejecting her subjective symptom
testimony.  Id. at 16.

PAGE 6 - FINDINGS AND RECOMMENDATION

In deciding whether to accept subjective symptom testimony, the ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  Id. at 1284; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

If the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).  A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Before addressing plaintiff's first allegation of error, a preliminary issue must be addressed.  Defendant asserts that the "clear and convincing standard is not triggered in this case, due to the presence of affirmative evidence of malingering consisting of Dr. Stuckey's report of test results." Def.'s Resp. 5.

On July 20, 2008, Dr. Stuckey conducted a one-time neuropsychological evaluation in conjunction with plaintiff's

PAGE 7 - FINDINGS AND RECOMMENDATION

application for disability benefits.   Dr. Stuckey opined that plaintiff's elevated score on a SIMS test "raises the suspicion of malingering."  Tr. 299.  Within the same report, Dr. Stuckey stated that plaintiff's "MMPI-2 was seen as valid and her self-report does appear consistent with her current affective presentation that is predominated by heightened anxiety."  Tr. 300.

Plaintiff contends that Dr. Stuckey used the wrong scoring technique, which "may have resulted in erroneous identification of possible malingering."  Pl.'s Opening Br. 15.  Moreover, plaintiff argues that, even if the SIMS test was properly evaluated, "Dr. Stuckey did not diagnose malingering . . .[h]e merely listed it as a 'rule out' possibility."  Pl.'s Reply 2.  As such, plaintiff asserts that there was no affirmative evidence of malingering, especially since Dr. Stuckey's report is internally inconsistent.

I am inclined to agree with plaintiff; however, this Court will not second-guess the medical technique employed by an examining doctor.  Regardless, it should be noted that a suspicion of malingering does not rise to the level of an affirmative demonstration.  This is especially true where the doctor making the assessment indicates, within the same report, that plaintiff's other objective medical findings were consistent with her anxious affect.  Tr. 300.  In addition, there is no other evidence in the record that plaintiff was malingering or otherwise exhibiting gain-seeking behavior.  Therefore, because there was no affirmative evidence of malingering, the ALJ's reasons for rejecting plaintiff's testimony must be "clear and convincing."

PAGE 8 - FINDINGS AND RECOMMENDATION

Lingenfelter, 504 F.3d at 1036.

Moving to the credibility determination, plaintiff testified that she was capable of a full range of daily activities, including managing her home and caring for her young children as a single parent. Tr. 99, 322-4. Plaintiff acknowledged that her mental impairments were under control within her own home or in other places that she felt comfortable, such as at her boyfriend's house. However, when plaintiff leaves the house, her PTSD and anxiety manifest themselves; plaintiff testified that she fears people and public settings, and has vomited or cried on numerous outings as a result of this anxiety. Tr. 87, 104-5. Accordingly, plaintiff explained that she leaves the house as little as possible. Tr. 102-3. Plaintiff also stated that her anxiety and PTSD have negatively effected her memory and her ability to follow directions and complete tasks. Tr. 103-4.

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her statements regarding the extent of these symptoms were not credible. Tr. 23. Specifically, the ALJ found that plaintiff's daily activities "are not limited to the extent that one would expect, given the complaints of disabling symptoms and limitations," noting that plaintiff was able to vigorously clean her house daily, take care of her personal hygiene, raise her young children, attend appointments and social events, shop, as well as to go out to a bar, where she met her current boyfriend. Tr. 22-4. Inconsistencies in a claimant's testimony, including

PAGE 9 - FINDINGS AND RECOMMENDATION

those between daily activities and the alleged symptoms, can serve as a basis for discrediting it.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); Smolen, 80 F.3d at 1284 n.7.

Because the record indicates that plaintiff is not seeking disability benefits based on a physical impairment, her activities of daily living, especially as they occur within the home, have little bearing on her disability assessment.   In other words, plaintiff's testimony regarding her physical capabilities is not necessary inconsistent with her alleged mental impairments. Further, the ALJ may not selectively refer to certain activities out of context in making its credibility evaluation.  See Reddick v. Chater, 157 F.3d 715, 722-3 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and, thus, did not support an adverse credibility finding).  As such, the ALJ's determination that plaintiff was not credible, based on her daily activities within the home, should not be sustained.

Nevertheless, the ALJ discounted plaintiff's testimony regarding the extent of her impairments for two additional reasons. First, the ALJ found that plaintiff "had been non-compliant with medical care" because she failed to get an MRI as directed by Dr. Glantz.  Tr. 14.  While a lack of medical treatment is a valid reason to discredit a claimant's testimony, before drawing a negative inference, the ALJ must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits."

PAGE 10 - FINDINGS AND RECOMMENDATION

See SSR 96-7p, available at 1996 WL 374186, *7; Burch, 400 F.3d at 681.

Here, the record reveals that plaintiff has been receiving regular medical treatment, including counseling and medication, for her psychological impairments. Tr. 214-58, 267-94, 326-7. Plaintiff admitted that she did not follow through with the MRI, explaining that, when she arrived at the appointment and the technician would not let her boyfriend be in the room during the exam, "I got more scared but tried hard to do it. I lasted about 10 more mins [sic] and started crying and could not do it. I had to leave." Tr. 106.

The ALJ did not question plaintiff at the hearing regarding the missed MRI and, further, made no reference to plaintiff's explanation in his opinion. Tr. 24. As such, the ALJ's adverse credibility finding is not based on substantial evidence, as the record reveals that, with the exception of this one appointment, for which she adequately justified her absence, plaintiff has been wholly compliant with the prescribed medical care. Accordingly, the ALJ's finding that plaintiff is not fully credible because she was unable to go through with an MRI should not be sustained.

Second, the ALJ found that plaintiff's "symptoms improved with the use of medication." As stated above, inconsistencies in a claimant's testimony, including those between the medical evidence and the alleged symptoms, can serve as a basis for discrediting it. Morgan, 169 F.3d at 599 (ALJ properly discredited claimant's subjective testimony where medical records showed that claimant's

PAGE 11 - FINDINGS AND RECOMMENDATION

mental symptoms improved with the use of medication). Moreover, an alleged impairment is not disabling if it can be adequately controlled with treatment. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ stated that treatment records revealed that plaintiff's PTSD "improved as recently as April 2008 and [was] deemed 'stable.'" Tr. 24. In addition, the ALJ noted that plaintiff reported that, when she used medication, "she was 'much less anxious'" outside of the home and, as a result, "was able to go outside 'regularly'". Id. Further, the ALJ remarked that the record indicated that plaintiff's treatment was going so well that she was able to discontinue the use of certain other medications. Id. Accordingly, because plaintiff's subjective reports were inconsistent with her record of improvement, which indicated that plaintiff's mental impairments had been sufficiently controlled by medication and counseling, the ALJ discredited plaintiff's testimony. Id. The administrative record supports the ALJ's determination; as such, the ALJ's finding that plaintiff is not fully credible because her symptom testimony was inconsistent with medical reports of improvement should be sustained.

Thus, despite plaintiff's contentions to the contrary, the foregoing discussion reveals that the ALJ did identify specific evidence in the record that undermines plaintiff's claims that her impairments were so great that she was unable to work. Therefore, I find that the ALJ provided clear and convincing reasons to reject plaintiff's subjective testimony regarding the extent of her

PAGE 12 - FINDINGS AND RECOMMENDATION

limitations. As such, even though it was legal error for the ALJ to use plaintiff's physical activities within the home and failure to get an MRI to discredit her testimony, I find that such an error is harmless since additional, valid reasons support the ultimate credibility determination. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) ("[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal," (citations and internal quotations omitted)).

   B.   Third-Party Testimony

   Plaintiff also alleges that the ALJ improperly rejected the lay testimony of Charles Pitt. Pl.'s Opening Br. 18. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determined to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The reasons "germane to each witness" must be specific. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); see also 20 C.F.R. §§ 404.1513(d)(4), (e). However, in rejecting lay testimony, the ALJ need not cite to the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's

PAGE 13 - FINDINGS AND RECOMMENDATION

decision.  Lewis, 236 F.3d at 512.

Here, Charles Pitt, plaintiff's friend, completed a third-
party adult function report.  Tr. 115-22.  Mr. Pitt's report
describes an individual who is fully functional within her comfort
zone, but gets anxious around strangers or out in public.  Tr. 115,
120-1.  Mr. Pitt also stated that, despite this anxiety, plaintiff
is able to take her children to and from school, attend social
events, and go shopping.  Tr. 113, 119.  Further, Mr. Pitt remarked
that plaintiff is able to follow verbal and written instructions
"very well."  Tr. 120.

The ALJ specifically addressed Mr. Pitt's report, stating that
it was consistent with plaintiff's own testimony regarding her
daily activities.   The ALJ, however, disregarded Mr. Pitt's
statements that plaintiff "cannot survive in the common work force"
because  his  report  "show[ed]  few  actual  limitations.   I
specifically point out that Mr. Pitt stated that the claimant could
attend social events with her children . . . [which] is contrary to
the claimant's [allegations] that she has anxiety when leaving the
house as well as her adult function report that stated she only
socialized with her boyfriend."  Id.

Accordingly, the ALJ disregarded Mr. Pitt's testimony because
it was inconsistent with plaintiff's subject complaints regarding
the extent of her impairments.  Id.  As such, the ALJ provided a
germane and specific reason for rejecting the statements of Mr.
Pitt.  See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694
(9th Cir. 2009) (lay testimony can be discounted for the same

PAGE 14 - FINDINGS AND RECOMMENDATION

reasons as a claimant's subjective reports). Therefore, the ALJ's finding regarding the lay testimony of Mr. Pitt should be sustained.

C. Medical Opinion Evidence

Plaintiff next contends that the ALJ improperly rejected the opinions of Drs. Rory Richardson and Mary McCarthy. Pl.'s Opening Br. 12-4. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id.

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. Id. In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195.

i. Dr. Richardson

In September 2005, Dr. Richardson conducted a consultive neuropsychological evaluation in conjunction with plaintiff's application for disability benefits. Tr. 179-85, 259-65. Dr. Richardson's assessment is one of a multitude addressing plaintiff's mental impairments; these opinions are relatively

PAGE 15 - FINDINGS AND RECOMMENDATION

consistent in their diagnoses, but vary regarding the severity of plaintiff's impairments. As such, because Dr. Richardson's opinion is controverted by other medical evidence, the ALJ needed to provide specific and legitimate reasons for rejecting it. See Bayliss, 427 F.3d at 1216.

Dr. Richardson diagnosed plaintiff with PTSD, Obsessive Compulsive Disorder ("OCD"), Panic Disorder with Agoraphobia, and Mathematics Disorder. Tr. 182-5. In addition to making a psychological diagnosis, Dr. Richardson filled out an RFC form, in which he opined that plaintiff has marked difficulties with activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Tr. 261. In addition, Dr. Richardson noted that plaintiff had one or two episodes of decompensation, each of extended duration. Id. Beyond checking the box, the doctor made no reference to any objective evidence in his RFC assessment. Id.

The ALJ gave Dr. Richardson's opinion little weight for three reasons. Tr. 25. First, the ALJ discredited Dr. Richardson's report because "the entire assessment seems to be based on the claimant's subjective self-reporting of her symptoms, while attempting to qualify for public assistance benefits." Id. For example, Dr. Richardson "stated that the claimant had several episodes of decompensation . . . . [h]owever, the evidence in the record does not contain any evidence of decompensation episodes." Id. Accordingly, the ALJ concluded that, because he "did not include the necessary details to validate this finding," Dr.

PAGE 16 - FINDINGS AND RECOMMENDATION

Richardson's determination regarding episodes of decompensation must have been based on plaintiff's subjective testimony, which the ALJ properly discredited.

Second, the ALJ found Dr. Richardson's report internally inconsistent. The ALJ explained that is was "problematic that Dr. Richardson found marked limitations in the claimant's ability to perform her activities of daily living yet the claimant admitted that she . . . [has] few functional limitations on a daily basis." Tr. 25-6. In addition, the ALJ found it troublesome that Dr. Richardson opined that plaintiff had moderate difficulties with socialization, yet noted that plaintiff reported "she was able to talk to her neighbors, leave her house and drive a car, shop with her boyfriend, watch the television and attend appointments unassisted." Tr. 26.

Third, the ALJ found that Dr. Richardson's report was inconsistent with other medical evidence. The ALJ stated that more recent reports from "treating sources have noted some improvements with the claimant's condition and have stated her mental impairments improved with the use of medication . . . which contradict the marked limitations indicated in this assessment." Id.

The ALJ is not required to accept a medical opinion that is not supported by clinical findings or is based on an uncredible claimant's subjective reports. See Bayliss, 427 F.3d at 1216; Bray, 554 F.3d at 1228; Batson, 359 F.3d at 1195. As discussed above, there is substantial evidence in the record supporting the

PAGE 17 - FINDINGS AND RECOMMENDATION

ALJ's finding that plaintiff is not credible.   Also, as the ALJ
noted, Dr. Richardson's report is not consistent internally or with
the administrative record.      Further, Dr. Richardson does not
specify which portions of his assessment are based on plaintiff's
subjective testimony as opposed to independent clinical findings;
thus, it is impossible to decipher which segments of Dr.
Richardson's RFC are supported by objective medical evidence.   As
such, I find that the ALJ set forth sufficient reasons for not
fully crediting Dr. Richardson's medical opinion.

> ii.  <u>Dr. McCarthy</u>

On November 9, 2006, Dr. McCarthy performed a psychiatric
evaluation.    Tr. 240-2.   Dr. McCarthy diagnosed plaintiff with
Major Depression, PTSD, and Panic Disorder with Agoraphobia, with
a global assessment functioning ("GAF") score of 40, which
indicates a "serious impairment in reality testing or communication
or a major impairment in several areas, such as judgment, thinking,
or mood."   Tr. 23, 242.    To alleviate plaintiff's symptoms, Dr.
McCarthy prescribed Doxepin, which plaintiff "agreed to give a
try."   Tr. 242.   In addition, Dr. McCarthy advised plaintiff to
discontinue her daily alcohol consumption, "as it may be
contributing to emotional problems."   <u>Id.</u>  In this report, however,
Dr. McCarthy did not discuss whether or how these diagnoses would
result in limitations on plaintiff's ability to perform work-
related activities.

On December 22, 2006, Dr. McCarthy performed a follow-up exam.
Tr. 239.    At that time, plaintiff reported that Doxepin "has

PAGE 18 - FINDINGS AND RECOMMENDATION

significantly helped her mood and sleep" and has made her feel "much better." Id. However, plaintiff reported that she was still drinking daily. Id. As such, Dr. McCarthy opined that plaintiff "is significantly improved on Doxepin although she still has significant anxiety. Because research shows that even an occasional drink of alcohol can affect negatively depression and anxiety, I advised plaintiff not to drink at all." Id.

Without discussing Dr. McCarthy's other diagnoses, the ALJ found the GAF "score inconsistent with the medical evidence or the claimant's daily activities." Tr. 23. Therefore, the ALJ assigned little weight to Dr. McCarthy's determination that plaintiff had a serious impairment in reality testing or communication or a major impairment in other areas. Id.

Plaintiff asserts that it was error for the ALJ to disregard plaintiff's GAF score based on her activities of daily living. Pl.'s Opening Br. 15. This Court declines to address whether this was improper, as the ALJ provided a second, valid reason for discrediting the doctor's opinion. In addition to plaintiff's daily activities, the ALJ discredited Dr. McCarthy's initial diagnosis of a GAF score of 40 because it was inconsistent with the other medical evidence, including Dr. McCarthy's follow-up report, which indicated that plaintiff's impairments were being successfully treated with medication. Tr. 23-4.

Because plaintiff's symptoms were greatly alleviated through treatment, and because her anxiety may have been exacerbated by her alcohol consumption, it is unclear whether the GAF score was still

PAGE 19 - FINDINGS AND RECOMMENDATION

valid at the time of plaintiff's December 2006 appointment with Dr.
McCarthy.    Regardless, Dr. McCarthy's reports, even if fully
credited,  do  not  support  findings  of  substantially  greater
functional limitations than those already addressed, especially
since a mental impairment is not disabling where, as here, it can
be adequately controlled with treatment.  Warre, 439 F.3d at 1006.
Thus,  the  ALJ  provided  specific  and  legitimate  reasons  for
discrediting Dr. McCarthy's GAF assessment.

Therefore, I find that the ALJ properly evaluated the opinions
of Drs. Richardson and McCarthy.   To the extent that the ALJ may
have erred in that evaluation, such an error was harmless.  Stout,
454 F.3d at 1055 (mistakes that are "nonprejudicial to the claimant
or irrelevant to the ALJ's ultimate disability conclusion" are
harmless error).   Accordingly, the ALJ's interpretation of the
medical record does not provide a basis to overturn the decision
and, as such, should be sustained.

D.   Plaintiff's RFC Determination

Plaintiff contends that the ALJ failed to accommodate the full
range of her limitations in the RFC.   Pl.'s Opening Br. 16, 19.
Specifically, plaintiff argues that the ALJ did not incorporate all
of Dr. Stuckey's limitations, even though "the ALJ purported to
give Dr. Stuckey's opinion heavy weight."   Id. at 16.   Plaintiff
asserts that this omission renders "the VE's testimony that
[p]laintiff can perform [the identified] occupations" invalid.  Id.
at 19.

In assessing the RFC, the ALJ must consider limitations

PAGE 20 - FINDINGS AND RECOMMENDATION

imposed by all of a claimant's impairments, even those that are not severe.  SSR 96-8p, available at 1996 WL 374184, *5.  Further, the ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion.  20 C.F.R §§ 404.1527, 416.927. However, the RFC need only incorporate limitations found on the record.  Osenbrock v. Apfel, 240 F.3d 1157, 1164-5 (9th Cir. 2001).

As discussed above, Dr. Stuckey performed a neuropsychological evaluation in July 2008.  Dr. Stuckey diagnosed plaintiff with Panic Disorder with Agoraphobia and OCD.  Tr. 299. In addition, Dr. Stuckey listed PTSD and malingering as rule out possibilities.  Id. In his report, Dr. Stuckey also commented on the inconsistencies between plaintiff's behavior and her statements regarding her symptoms.  For example, Dr. Stuckey noted that plaintiff was able to track, attend, and respond to questions he verbally posed, and that her "thought processes appeared to be logical and progressive", despite plaintiff's self-reports that she had difficulty with attention and concentration "all the time" and that directions needed to be repeated.  Tr. 26, 297-9.

Dr. Stuckey also prepared an RFC assessment, in which he opined that plaintiff had moderate difficulties understanding and carrying out complex instructions, making judgments on complex work-related decisions, interacting appropriately with supervisors and co-workers, and responding appropriately to usual work situations and changes in routine.  Tr. 301-2.  In addition, Dr. Stuckey opined that plaintiff had marked limitations in her ability to interact appropriately with the public.  Tr. 302.

PAGE 21 - FINDINGS AND RECOMMENDATION

The ALJ gave full credit to Dr. Stuckey's opinion "because [he] performed an objective examination." Tr. 27. The ALJ found that Dr. Stuckey's diagnosis was consistent with the other medical evidence, as well as "point[ing] out test results that showed the possibility of malingering, which is evident with her self-reporting that is out of proportion to the objective findings." Id. Finally, the ALJ noted that Dr. Stuckey's "testing confirms that the claimant does not have significant cognitive limitations that would prevent her from working an ordinary work day." Id.

Thus, because the ALJ fully credited Dr. Stuckey's opinion, plaintiff is correct that his limitations needed to be incorporated into her RFC. Here, the ALJ found that plaintiff has the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot have any contact with the public. The claimant can have occasional interaction with coworkers. The claimant is limited to simple, repetitive tasks." Tr. 22.

Plaintiff argues that this RFC fails to integrate Dr. Stuckey's limitations "in [her] ability to interact appropriately with supervisors or respond to changes in a routine work setting." By plaintiff's own admission, however, she has no greater difficulty getting along with supervisors than anyone else. Tr. 105. Further, Dr. Stuckey opined that plaintiff had moderate, rather than marked, difficulties in interacting appropriately with supervisors. The term "moderate" does not indicate a degree of limitation that must be expressly reflected in the RFC assessment.

PAGE 22 - FINDINGS AND RECOMMENDATION

See <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1077 (9th Cir. 2007).  As such, based on record, the ALJ's RFC determination in regard to plaintiff's ability to interact appropriately with supervisors is not an unreasonable interpretation of the evidence and, thus, should be sustained.  <u>Id.</u>; <u>see also</u> <u>Batson</u>, 359 F.3d at 1195-96.

Moreover, the RFC includes limitations based on plaintiff's difficulties with responding to changes in a routine work setting. The ALJ found that plaintiff was limited to "simple, repetitive tasks." Tr. 22.  An RFC to perform simple, repetitive tasks is sufficient to accommodate a claimant's moderate limitations in attention, concentration, and social abilities.  <u>See Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1173-4 (9th Cir. 2008). Plaintiff does not detail what other limitations follow from Dr. Stuckey's assessment, besides those already listed in the RFC. Accordingly, I find that the ALJ adequately incorporated Dr. Stuckey's nonexertional limitations into the RFC.

Regardless, plaintiff argues the ALJ failed to meet his step five burden of identifying specific jobs which she could perform because the ALJ's hypothetical was incomplete.  In support of her contention, plaintiff merely restates her assertion that the RFC determination did not account for all her limitations because "the ALJ omitted plaintiff's credible allegations, those of the lay witness Charles Pitt, and the limitations described by Drs. McCarthy, Richardson, and Stuckey." Pl.'s Opening Br. 19.  As discussed above, this Court finds that the ALJ did not improperly assess such evidence.

Thus, the ALJ's hypothetical to the VE accurately reflected plaintiff's work-place restrictions.    Accordingly, because the ALJ's evaluation of plaintiff's credibility, lay testimony, and the medical evidence was not erroneous, plaintiff is unable to demonstrate that the RFC and hypothetical questions to the VE were incomplete or invalid.  Stubbs-Danielson, 539 F.3d at 1175-6; see also Bayliss, 427 F.3d at 1217 (ALJ could rely on VE's testimony, even though hypothetical presented to VE did not include all of claimant's alleged limitations, where hypothetical contained all limitations that ALJ found credible and supported by substantial evidence).

E.  Jobs Identified by the VE

Finally, plaintiff contents that the ALJ erred by accepting the VE's testimony that plaintiff could work as a sandwich maker and janitor.  Specifically, plaintiff contends that the job of sandwich maker is inappropriate because it requires interaction with the public and, thus, the VE's testimony that plaintiff could perform such a job conflicts with the DOT.  Pl.'s Opening Br. 19. In addition, plaintiff contends that the job of janitor is not suitable for "a sexual assault PTSD victim to perform . . . [because it involves] going through dark and scary rooms . . . never knowing [if] a total stranger might be encountered."  Id. at 11.

The ALJ may not rely on VE testimony that conflicts with the DOT unless the record contains "persuasive evidence" to support the deviation.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

PAGE 24 - FINDINGS AND RECOMMENDATION

Here, as plaintiff correctly points out, the DOT states that the job of sandwich maker involves public contact. See DOT # 317.664-010, available at http://www.ocupationalinfo.org/31/317664010.html. As such, the VE's testimony that plaintiff could work as a sandwich maker, without public contact, conflicts with the DOT. Id.; Tr. 330. Because there was no additional evidence to support this deviation, I find that it was error for the ALJ to rely on the VE's testimony that plaintiff could perform the job of sandwich maker based on her RFC. Johnson, 60 F.3d at 1435. Regardless, such an error was harmless, as the VE identified two other jobs that exist in significant numbers in the national and local economies, both of which require no public contact under the DOT and that are otherwise consistent with plaintiff's RFC. Tr. 331; See Stout, 454 F.3d at 1055.

Moreover, the fact that plaintiff perceives the job of janitor as unsuitable is irrelevant; where, as here, the VE's testimony does not conflict with the DOT, the ALJ can rely on that opinion if it is properly based on the claimant's RFC and other vocational factors. See Bayliss, 427 F.3d at 1218. Therefore, the ALJ's determination at step five of the sequential process should be sustained.

**RECOMMENDATION**

For the foregoing reasons, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED and a JUDGMENT should be prepared.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 7th day of February, 2012.

Paul Papak
United States Magistrate Judge